

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

__SOUTHERN__ DISTRICT OF __ALABAMA__

UNITED STATES OF AMERICA

v.

**ELEAZAR PALOMINO, JR.
and PEDRO JIMENEZ**

CRIMINAL COMPLAINT

CASE NUMBER: MJ 11-0086-B

I, the undersigned complainant, being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about **March 11, 2011** in Mobile County, in the Southern District of Alabama, defendants did,

> **transport concealed bulk cash proceeds derived from illicit drug trafficking activity with the intent to promote, facilitate and carry on the illicit drug trafficking activity and conduct an unlicensed money transmitting business.**

in violation of  Title 18, United States Code, Section 1952 and Title 18, United States Code, Section 1960.

I further state that I am a(n) _____**Special Agent**_____ and that this complaint is based on the following facts:
                                              Official Title

See Attached Affidavit (Attachment "A") hereby incorporated by reference as if fully restated herein.

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Complainant
**Euvaldo Pena**
**Special Agent**
**Homeland Security Investigations**

Sworn to before me and subscribed in my presence,

March 25, 2011                                                at            Mobile, Alabama
Date                                                                              City and State

Sonja F. Bivins, U. S. MAGISTRATE JUDGE
Name & Title of Judicial Officer                                    Signature of Judicial Officer



## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
### (ATTACHMENT "A")

I, Euvaldo Peña, being duly sworn, depose and state:

1. I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), currently assigned to the Office of the Assistant Special Agent in Charge, Mobile, Alabama. I have been a special agent now for 4 years. I have a total of 26 years of law enforcement experience, including nine 1/2 years serving with the US Border Patrol, nine 1/2 years serving with the Hidalgo County, Texas Sheriff's Department and three years with the Texas Department of Criminal Justice.

2. I have received specialized training on how to conduct investigations involving the unlawful manufacturing, distribution, and dispensing of controlled substances and on the federal criminal statutes that regulate such activities. Along with other special agents of HSI, I am responsible for investigating and enforcing violations of 18 U.S.C. 1956, 21 U.S.C. § 841, as well as 21 U.S.C. § 846, and relevant regulations. I have participated in numerous investigations concerning violations of United States laws relating to the unlawful manufacturing, distribution and dispensing of controlled substances, which often include investigations into the laundering and distribution of drug proceeds.

3. On March 11, 2011 at approximately 1533 hours, Officer Patrick Brandle, was on patrol on Interstate 10 in Jackson County Mississippi. Officer Brandle observed a silver 2004 Ford Taurus, Texas tag CP5S321, traveling westbound in the outside lane near the 72 mile marker. Officer Brandle observed the vehicle drift to the right, driving on the outside fog line (MS-63-3-1213, Careless Driving). Officer Brandle initiated a traffic stop and made contact with the two occupants.

4. The driver provided Officer Brandle with a Texas Identification Card # 12110722, DOB 7-24-1973 that identified him as Eleazar PALOMINO Jr. residing at 9962 Raccoon Rd, San Angelo, Texas 76901. The front seat passenger provided a Texas Driver License # 294734454, DOB 1-8-1987 that identified him as Pedro JIMENEZ, residing at 609 South M street, Harlingen, Texas 78550. The vehicle showed to be registered to Marilee Berry, 4804 Solido, Brownsville Texas 78520.

5. Officer Brandle asked PALOMINO who owned the vehicle and the passenger JIMENEZ stated it was his. Officer Brandle observed JIMENEZ to be nervous, with "cotton mouth" and not wanting to have eye contact with him. Officer Brandle could smell an odor similar to spray paint coming from the interior of the car.

6. Officer Brandle asked PALOMINO where they were coming from and PALOMINO stated Mobile, Alabama. Officer Brandle asked PALOMINO why they went to Mobile and PALOMINO stated to see a friend. Officer Brandle asked PALOMINO what the friends name was and PALOMINO could not tell him the name. Officer Brandle asked PALOMINO how long they were in Mobile and PALOMINO stated a day. Officer Brandle asked PALOMINO who the

passenger was in the vehicle with him and PALOMINO stated his brother in law, Pedro. Officer Brandle asked PALOMINO if he had been arrested before and PALOMINO stated he had for trafficking.

7. Officer Brandle asked JIMENEZ, who still looked nervous, where they were coming from and he stated Mobile, Alabama. Officer Brandle asked JIMENEZ who was driving the vehicle and JIMENEZ stated his brother in law Eleazar PALOMINO. Officer Brandle asked JIMENEZ whom they went to see in Mobile and JIMENEZ stated PALOMINO's family member, but could not give a name.

8. PALOMINO and JIMENEZ stated that Officer Brandle could look in the vehicle.

9. At this time, Officer Brandle requested Officer Derrick Welton to run his K-9 "Rocko" around the exterior of the vehicle. Officer Welton informed Officer Brandle that his K-9 had an alert response to the odor of narcotics. Deputy Darrell Thornton arrived on scene and advised Officer Brandle that he was going to speak to PALOMINO. PALOMINO stated there was currency located in the vehicle but did not know where.

10. FBI Safe Streets Task Force (TFO) Agent Havard arrived on scene and took over the investigation. A large amount of currency was located in a false compartment on the floor of the trunk behind the back seat. The manufactured compartment was covered with bondo (body filler) and spray paint to match the color of the vehicle. A number of packages containing US Currency were removed from the compartment. The packages were covered in plastic and electrical tape. Agent Havard took control of the evidence, vehicle and suspects.

11. PALOMINO was interviewed at the Federal Bureau of Investigation (FBI), Resident Agency (RA), Pascagoula, Mississippi. PALOMINO was provided with, and signed, an Advice of Rights Form, Financial Questionnaire, and Consent to Forfeiture Form. In summary, PALOMINO provided the following:

12. On March 5, 2011, a friend, no further information (NFI), introduced him to a Hispanic male, "FAT," approximately 35 to 40 years of age, approximately 6'4" in height, weighing approximately 300 pounds, NFI. The introduction occurred at "FAT's" ranch in Matamoros, Tamp, Mexico. FAT was identified as a person that could help PALOMINO make some money. During the meeting, "FAT" offered to pay PALOMINO $1,000.00 U.S. currency for every $20,000.00 U.S. currency that he would transport from other states within the United States back to a person located in Brownsville, Texas. PALOMINO accepted "FAT's" offer.

13. On March 5, 2011, "FAT" provided PALOMINO a telephone number (NFI) for a person (NFI) located in Brownsville, Texas. PALOMINO was instructed to contact the individual, who would then provide PALOMINO with an automobile. PALOMINO contacted the individual, a Hispanic male (NFI), who provided him a Ford Escort, approximately a 2000 model and $400.00 U.S. currency for travel expenses. The Hispanic male instructed PALOMINO to drive to Mobile, Alabama and register as a guest at the Roadway Inn Motel located near Exit 4, Interstate 65 North, in preparation to transport $40,000.00 U.S. currency back to Texas.

14. On March 6, 2011, PALOMINO arrived in Mobile, Alabama and registered as a guest in room number 219 of the aforementioned Roadway Inn Motel, which is located adjacent to a McDonald's Restaurant. Following his arrival, as instructed, PALOMINO telephonically contacted the Hispanic male in Brownsville, Texas to report his arrival. Shortly after the telephone call, a white male, approximately 25 years of age (NFI), came to room number 219 and left with the Ford Escort. Approximately three hours later, the white male returned the Ford Escort and he advised PALOMINO the car contained $65,000.00.

15. On March 6, 2011, PALOMINO drove back to Brownsville, Texas and delivered the Ford Escort, and the money concealed within it, to the aforementioned Hispanic male. At the time of delivery, the Hispanic male paid PALOMINO $3,000.00 U.S. currency.

16. On March 9, 2011, "FAT" telephonically contacted PALOMINO and asked if he wanted to earn some more money by making another trip to Mobile, Alabama. PALOMINO agreed and "FAT" instructed him to contact the Hispanic male in Brownsville, Texas again. The Hispanic male in Brownsville, Texas provided a 2004 Ford Taurus (same vehicle PALOMINO was stopped in on March 11, 2011), $500.00 U.S. currency for travel expenses, and instructed him to deliver the car to the occupant of room 227 at the same Roadway Inn Motel located in Mobile, Alabama. After receiving the vehicle, PALOMINO drove to his home in Harlingen, Texas, where PALOMINO remained until March 10, 2011.

17. On March 10, 2011, at approximately 12:00 p.m., PALOMINO and his brother-in-law, PEDRO JIMENEZ, departed Harlingen, Texas en route to Mobile, Alabama. At approximately 2:30 a.m., March 11, 2011, PALOMINO and PEDRO JIMENEZ arrived in Mobile, Alabama and registered as guests in room number 314 at Motel 6, Exit 4, Interstate 65 North, prior to delivering the Ford Taurus at the Roadway Inn. After registering at Motel 6, PALOMINO delivered the Ford Taurus to the same white male who was located in room number 227 of the Roadway Inn. Approximately three hours later, the white male returned the Ford Taurus to the Roadway Inn. Following the return of the vehicle, PALOMINO and JIMENEZ departed Mobile, Alabama en route back to Brownsville, Texas. The white male in Mobile was described as approximately 25 YOA, approximately 5'8" in height, slim build, associated with a gray Ford Mustang, approximately a 2000 model, who remained at room number 227 of the Roadway Inn at the time of their departure.

18. When asked to provide additional identification information regarding "FAT," the Hispanic male located in Brownsville, Texas, and the white male located in Mobile, Alabama, PALOMINO refused to provide additional information citing welfare concerns for his family members residing in the Harlingen, Texas area.

19. PEDRO JIMENEZ was interviewed at the Federal Bureau of Investigation, Pascagoula, Mississippi. JIMENEZ was advised of his Miranda Rights and he signed a waiver of rights form. JIMENEZ agreed to speak with Agents and in summary, JIMENEZ provided the following:

20. JIMENEZ stated that on 03-10-2011 at approximately 12:30 P.M., he and ELEAZAR PALOMINO departed Harlingen, Texas en route to Mobile, Alabama. PALOMINO told

JIMENEZ that they were going to meet up with a family member. JIMENEZ said PALOMINO never advised him the reason for the trip or the name of the family member. PALOMINO told JIMENEZ that he would be paid $300.00 for helping him drive.

21. JIMENEZ stated that they arrived at the Roadway Inn Hotel in Mobile, Alabama the following day at approximately 3:30 A.M. PALOMINO was unable to make contact with his family member at that location. They decided to get a room at the Motel 6 because it was cheaper. JIMENEZ stated that he was so tired when they arrived that he could not remember the room number.

22. JIMENEZ woke up around 8:00 A.M., and PALOMINO was already dressed. They left and went to Wal-Mart to pick up some items for the trip back to Texas. They then drove back to the Roadway Inn and as they were pulling in the parking lot, PALOMINO was talking to the subject they were to meet with on the phone. As they were pulling through the parking lot, the subject was leaving the parking lot and he passed by them driving a bronze in color Ford Mustang. JIMENEZ stated the subject was a black male but could not provide any further description. PALOMINO had pointed the subject out "as being the contact person on whom PALOMINO was waiting. PALOMINO gave JIMENEZ a room key to the Roadway Inn, room 226 or 227 and advised him to wait in the room until PALOMINO returned.

23. Approximately 45 minutes later, PALOMINO returned to the room at the Roadway Inn without the vehicle. PALOMINO advised JIMENEZ that someone had dropped him off and would be back soon with their car. Approximately 45 minutes later, a white male came into the room and gave the keys to PALOMINO. The white male was wearing a gray sweatshirt with a hood and gray sweat pants. This subject looked to be in his late twenties or early thirties.

24. On March 11, 2011, at approximately, 3:00 P.M., PALOMINO and JIMENEZ departed Mobile, Alabama en route back to Texas. JIMENEZ stated that they drove until Officer Patrick Brandle pulled them over in Mississippi on Interstate 10 for a traffic violation. JIMENEZ stated that Officer Brandle along with other Officers that arrived at the location of the traffic stop began to search the car. A few moments later the Officers advised JIMENEZ and PALOMINO that they had found a large sum of money that was hidden in the vehicle. The Officers asked JIMENEZ if the money belong to him and JIMENEZ stated no.

25. JIMENEZ advised that he was only there to help drive and he did not know that the money was in the vehicle or who it belonged to. JIMENEZ signed a consent to forfeiture form and a financial questionnaire.

26. TFA Havard processed PALOMINO and JIMENEZ and seized the money.

27. On March 24, 2011, AS AC Mobile, Alabama, Homeland Security Investigations (HSI) Special Agent's Euvaldo Pena and Angelo Fermo traveled to Pascagoula, MS and retrieved the documents related to PALOMINO and JIMENEZ and their criminal activity connected to the HSI Mobile Area of Responsibility, in the Southern District of Alabama.

28.  Among the items obtained was a copy of a Wal-Mart Mobile, Alabama receipt dated 03-11-2011 at 12:46 PM, at Mobile, Alabama. This receipt verifies PALOMINO's and JIMENEZ's statements that they were in fact in Mobile, Alabama on March 11, 2011.

29.  S/A Pena conducted checks in the Department of Homeland Security's TECS database. In this system S/A Pena found where on March 15, 2011 Deputies from the Dallas County, Texas Sheriff's Department arrested PALOMINO for possession of a controlled substance, to wit Cocaine over 400 grams, (a total of 4.58 KGS Cocaine). The arrest was pursuant to a traffic stop in which Officers became suspicious of PALOMINO. A canine search and subsequent manual search of the vehicle revealed four packages containing a substance that field-tested positive for cocaine, concealed behind the dashboard and airbag on the passenger side of the vehicle. A tool needed for remove the cocaine was found in PALOMINO's pocket. The vehicle was a black 2000, Ford Escort, bearing Texas registration BW2D285.

Based on the preceding facts, I believe that probable cause exists showing that PALOMINO and JIMENEZ violated Title 18, United States Code, Section 1952 (Interstate Transportation in Aid of Racketeering) and Title 18, United States Code, Section 1960 (Conducting an Unlicensed Money Transmitting Business).

This information is true and correct to the best of my knowledge, information and belief.

_____
Euvaldo Pena
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations


Subscribed and sworn
before me this 25th day of March 2011

_____
United States Magistrate Judge
Southern District of Alabama